UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-338-JBC

JANIE BELL COLLINS,                                                         PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                  DEFENDANT.

* * * * * * * * * *

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 6, 7). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I. Overview of the Process

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v.*

1

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

At the time of review, the plaintiff was a forty-nine-year-old female with a high school education. AR 151, 154. She alleges disability due to acute arthritis, which causes swelling in her feet, legs and hands and pain throughout her body.

AR 69. The plaintiff filed her claim for Disability Insurance Benefits on May 6, 2005, which was denied initially and on reconsideration. AR 15. After a video hearing held on October 6, 2005, Administrative Law Judge ("ALJ") Don C. Paris determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. AR 17. At Step 2, the ALJ found that the plaintiff had severe impairments of venous insufficiency and migratory arthritis. AR 17. The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. AR 18. At Step 4, the ALJ found that the plaintiff was capable of performing past relevant work as an office clerk and receptionist as performed in the national economy, and therefore the ALJ denied the plaintiff's claims for Disability Insurance Benefits at that step. AR 19, 20. The ALJ found the plaintiff's past relevant work did not require performance of work-related activities precluded by the plaintiff's residual functional capacity ("RFC"). The plaintiff's appeal was denied by the Appeals Council, and the plaintiff commenced this action.

**III. Legal Analysis**

The plaintiff argues the ALJ arbitrarily and capriciously rejected the opinion of her treating physician, Dr. James Owen, because objective medical evidence supports his opinion. Dr. Owen has treated the plaintiff for fifteen years. AR 123. The opinions of a treating physician are entitled to significant deference. *See, e.g.,*

*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion. *Wilson*, 378 F.3d at 544. An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings. *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). The ALJ must give good reasons for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544.

The ALJ rejected Dr. Owen's RFC assessment of severe limitations because it was not supported by either his records or objective medical evidence.[1] The

---

[1] Dr. Owen concluded the plaintiff would have moderate to severe difficulty with lifting, handling, and carrying objects. AR 124. On the medical assessment form, he indicated the plaintiff was limited to lifting ten pounds, standing and walking two hours a day, sitting four hours a day, and resting in a reclined position four hours a day. AR 145-146. In contrast, the ALJ found the plaintiff had the residual functional capacity to
 "lift and carry 20 pounds occasionally and 10 pound[s] frequently.
 The [plaintiff] can perform a limited range of light exertional work.

plaintiff argues that because Dr. Owen's RFC assessment is supported by the medical evidence of an elevated Rheumatoid Arthritis Factor of 72 IU/ML$^2$ (AR 128), his assessment should be given controlling weight. Further, Dr. Owen noted that his early testing of the plaintiff revealed an elevation of her RA factor and that over the years that factor had become more positive. AR 123.

While the ALJ's opinion does not address this elevated RA factor, it does address other portions of Dr. Owen's treatment records that fail to support his RFC assessment. For instance, while the doctor stated the plaintiff was positive for rheumatoid arthritis and migratory arthritis, the April 20, 2005, laboratory report revealed a negative 34 anti-nuclear antibody screen. AR 19, 128. This test is used in the diagnosis and management of autoimmune diseases. DE 7 at 7. The ALJ pointed out that Dr. Owen stated the plaintiff had vascular problems, yet the doctor also stated her Venous Duplex of the lower right extremity was negative. AR 19, 123.

In addition to the reasons specifically articulated by the ALJ, he generally stated that the opinion of Dr. Owen is not supported by his own notes and medical findings. A review of the record supports this conclusion. First, Dr. Owen's own

---

Because of swelling in her legs, she requires a sit/stand option with no prolonged standing in excess of one hour without interruption, no more than frequent pushing and pulling with the lower extremities and only occasional climbing of stairs, ramps and never ladders, ropes, scaffolds. She is limited to occasional stooping, kneeling, crouching and never crawling."

$^2$ A normal RA factor is less than 14 IU/ML. AR 11.

treatment records do not indicate a concern for the elevated RA factor. On April 21, 2005, Dr. Owen noted the plaintiff had a positive RA; however, that same record stated the plaintiff was "doing well." AR 125. This entry was made after the April 20, 2005, lab report containing the elevated RA factor the plaintiff cites as support for Dr. Owen's RFC assessment. AR 127-128. Further, Dr. Owen stated he had treated the plaintiff for fifteen years, but the record contains treatment records only from April 2002 to August 2005. AR 123-128. Additionally, on October 18, 2004, the doctor suggested a full physical be performed in the future, yet no exam results of a physical were included in the record. AR 125. The records submitted by Dr. Owen contain few objective findings that support the degree of functional limitation reported by the doctor in his RFC assessment.

Though a treating physician's opinions are ordinarily given significant deference, the court finds substantial evidence exists to support the ALJ's decision to reject Dr. Owen's RFC assessment.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 6) is **DENIED**.

Signed on November 26, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

7